JESSIE G. WILKINS, ADMINISTRATRIX, ET AL., APPELLEES, V. BENJAMIN H. ROWAN ET AL., APPELLANTS.

FILED NOVEMBER 17, 1921.    No. 21542.

1. **Wills: Construction: "Issue of the Body."** Where there was a devise of land to James for life, and at his death to the issue of his body in fee simple, if he shall leave any such issue surviving him, if not, then the same to go to the heirs of testator's blood, *held,* that by the term "issue of his body" testator meant lineal descendants, and not children only.

2. ———: ———: Devise. A devise of land to James for life, and at his death to the issue of his body, if he shall leave any such surviving him, but, if he shall not, then said land to go to the heirs at law of testator, *held,* an estate in remainder, and not an executory devise to the issue of James, and that B. and D., sons of James, took a vested estate in remainder at the death of testator, subject to open and let in afterborn issue.

3. ———: ———: ———. *Held*, further, that said vested estate, or interest, was defeasible, and not absolute, and that the death of D., one of the sons of James, during the life of his father, defeated his interest, and that his (D.'s) three minor children took the interest of their father, not as his heirs at law, however, but as issue of the body of their grandparent as substituted devisees in place of their deceased father, and conditional upon their surviving their said grandparent.

APPEAL from the district court for Otoe county: JAMES T. BEGLEY, JUDGE. *Affirmed.*

*Paul Jessen, Matthew Gering, Albert S. Johnston* and *Peterson & Devoe,* for appellants.

*Pitzer, Cline & Tyler, contra.*

Heard before MORRISSEY, C. J., ROSE, DAY and FLANSBURG, JJ., LESLIE, District Judge.

LESLIE, District Judge.

This is an action brought in the district court for Otoe county for the construction of the will of David R. Rowan, who was a resident of Ohio. Upon the construction of his will depends title to 160 acres of land in Otoe county. The paragraph of the will involved is as follows:

"Third. I own a farm of 160 acres situate in Otoe county in the state of Nebraska, on which my said son James Rowan has for some years resided and now resides, and I will and devise said farm of 160 acres to my said son James Rowan, to have and to hold during the term of his natural life, and at his death, to the issue of his body, in fee simple, if he shall leave any such issue, but if he should not leave any such issue surviving him, then in that case, the same must go to my heirs of my blood, that is, to the person or persons who would at that time inherit the same from me, in case I then died intestate, being the owner thereof."

David R. Rowan, the maker of the will in question, will hereafter be referred to as testator to avoid confusion of his name with that of his deceased grandson, David R. Rowan.

The testator was the father of two sons, Robert, residing in Ohio, and James, residing in Nebraska. At the time of the execution of his will he was the owner of 110 acres of land in Clermont county, Ohio, upon which his son Robert resided, and 160 acres in Otoe county, Nebraska, upon which his son James resided. He devised the Ohio land to his son Robert and the issue of his body, in the exact language used by him in devising the Nebraska land to his son James and the issue of his body.

At the time of the death of the testator, James Rowan, to whom the life estate in the Otoe county land was devised, was the father of two sons, Benjamin H. and David R. Rowan. James Rowan and his son Benjamin are still living. David died in 1919, leaving a widow and three minor sons.

The original plaintiff was Caroline E. Rowan, for herself and her minor sons. She died before disposition of the case in the lower court, and the action was revived as to her in the name of Jessie G. Wilkins, Administratrix. As guardian for the children of David R. Rowan, she was also substituted in place of their deceased mother, Caroline E. Rowan, who had appeared as their next friend. James Rowan, holder of the life estate, Benjamin H. Rowan, surviving son of James Rowan, Frank E. Coe, administrator of the estate of David R. Rowan, deceased (son of James Rowan), Albert S. Johnston, trustee of the bankrupt estate of Benjamin H. Rowan, Citizens State Bank of Peru, and Wilbur W. Sims were made defendants.

The interest of the Citizens State Bank arose out of a mortgage executed by Benjamin H. Rowan and his wife. The interest of the defendant Sims is due to a lease of the premises executed by James Rowan, holder of the life estate, and Benjamin H. Rowan, his only surviving son.

Following the death of David R. Rowan, his brother, Benjamin H., claimed to be the sole surviving issue of the body of their father, to whom the life estate was devised, and that, as such, would become vested with title to the

entire estate in remainder conditional upon surviving his father; in other words, that the will created a contingent remainder, or an executory devise, and that by the use of the words, "issue of the body," is meant children, and not grandchildren or lineal descendants. The appellant Coe, as administrator of the estate of David R. Rowan, claims that David was possessed of a vested interest in the land dating from the death of the testator, and that this title passed by descent to his widow and children and became an asset in the hands of the administrator.

The appellees, who are the minor children of David R. Rowan, concede that Benjamin H. Rowan has the same interest in the land their father had in his lifetime; but contend that it is a vested interest, subject to defeasance, in case of his death before the termination of the life estate. They further assert that they have a present vested interest in the land coextensive with that held by Benjamin H. Rowan, not as heirs at law of their father, but as issue of the body of their grandparent, James Rowan, as substituted devisees in place of their father, David R. Rowan, conditional upon their outliving their grandfather, in whom the life estate is vested.

The trial court found in accordance with the views of the appellees, and decreed that Benjamin H. Rowan had a vested interest to an undivided one-half interest in the land contingent upon his surviving his father, and that appellees, minor children of David R. Rowan, had a vested interest in an undivided one-half interest in the land conditional upon their surviving their grandfather. From this decree appellants have appealed to this court.

The first question presented is whether the words, "issue of his body," mean lineal descendants, or are restricted to children. 1 Schouler, Wills, Executors and Administrators (5th ed.), sec. 535, states: "A gift to 'issue,' as a phrase of law, imports *prima facie* descendants of every degree from the common ancestor, including children and those more remote."

2 Jarman, Wills (6th ed.) *946, states: "The word

'issue,' though its popular sense is said to be children, is technically, and when not restrained by the context, coextensive and synonymous with descendants, comprehending objects of every degree."

This court in *Godden v. Long*, 104 Neb. 13, opinion written by Chief Justice Morrissey, held as follows: "The term 'issue,' or 'lawful issue,' in its primary legal sense, means descendants or lineal descendants generally, and not merely children.   *   *   *   It is only when it is used in a special instrument, whose context shows that a narrower construction was intended, that its meaning will be limited."

The rule in this state and other state and federal jurisdictions seems to be settled that a devise to "issue" or "issue of the body" will be construed as meaning lineal descendants, rather than children, in the absence of qualifying words showing a contrary intent. *In re Lawrence's Estate*, 181 N. Y. Supp. 498; *Petry v. Langan*, 227 N. Y. 621; *In re Farmers Loan & Trust Co.*, 231 N. Y. 41; *City Nat. Bank v. Slocum*, 272 Fed. 11, 19; *Hickox v. Klaholt*, 291 Ill. 544.

We do not find such words of qualification in this will, and hold that by the use of the words, "issue of his body," the testator meant lineal descendants.

At the date of the death of the testator, and when the will was admitted to probate, James Rowan, who took the life estate, was, as previously stated, the father of two sons, David and Benjamin.   We are asked to decide whether they took a vested interest at the death of the testator, or a contingent interest to take effect at the death of their father.   If they took a vested interest, it becomes necessary to determine, in the case of David, who died before his father did, whether his interest descended to his heirs at law or was defeasible and lapsed at his death.   Benjamin H. Rowan claims that the estate created by the language of the will is a contingent remainder to take effect at the date of the death of James Rowan, to whom the life estate was devised.   He further

contends that, if it is not construable as a contingent remainder, it may consistently be held an executory devise. In some cases the line between a contingent remainder and an executory devise is not clear, but they are fundamentally distinguishable. Both are interests or estates in land to take effect in the future and depend upon a future contingency. An executory devise is an interest such as the rules of law will not permit to be created in conveyances, but will allow in case of wills. It follows a fee estate created by a will. A contingent remainder may be created by will or other conveyance, and must follow a particular or temporary estate created by the same instrument of conveyance. Thompson, Wills, sec. 241, defines the distinction between an executory devise and a contingent remainder in this language: "The essential characteristics of a remainder are: (1) There must be a precedent particular estate, whose regular termination the remainder must await. (2) The remainder must be created by the same conveyance, and at the same time, as a particular estate. (3) The remainder must vest in right during the continuance of the particular estate, or *eo instanti* that it determines. (4) No remainder can be limited after a fee simple. The necessary features of a remainder arise out of the definition. The definition describes a remainder as the remnant of the whole after a part has been disposed of. It follows, therefore, of course, that there must be that part in order to fulfil the definition. The chief distinction between a remainder and an executory devise is that a remainder follows a particular estate, while an executory devise follows a fee."

Washburn, Real Property, sec. 1757, states that one of the distinctions between a remainder and an executory devise is that a remainder follows a particular estate, while an executory devise follows a fee.

In *Burleigh v. Clough,* 52 N. H. 267, the rule is announced as follows: " 'An executory devise is a future interest, such as the rules of law do not permit to be

created in conveyances, but allow in the case of wills, like an interest given after an estate in fee simple, or to arise *in futuro,* without a particular estate to support it. The distinction between an executory devise and a vested remainder is elementary. An executory devise is such a disposition of lands by will, that thereby no estate vests at the devisor's death, but only on some future contingency. It needs no particular estate to support it. An estate in remainder is one limited to take effect and be enjoyed after another is determind. No remainder can be limited after the grant of a fee simple, because the tenant in fee has the whole."

No estate in fee simple was created by the testator's will that preceded the devise to the issue of the body of James Rowan, to whom was devised the life estate, therefore the estate created by the will of the testator and devised to the issue of the body of James Rowan, life tenant, was a remainder, and not an executory devise.

The next question is whether the remainder thus created is vested or contingent. The subject of estates in remainder has been a fruitful subject of litigation in this country and in England over a long period of time. In the instant case it has been presented to this court by the pleadings and the briefs with unusual clearness. It was also argued to the court with great care and ability. The cases cited are so numerous that we shall not undertake to refer to all of them, or even to a considerable number, however interesting and instructive it might prove. The policy of the law has always been to look with favor upon the early vesting of estates, and a remainder will never be held to be contingent if it can reasonably be held to be a vested remainder.

2 Underhill, Law of Wills, sec. 860, states the rule to be: "Whenever it is possible the future interest will be construed as vested, and hence alienable and devisable by the remainderman. It is not so much the certainty or uncertainty of the enjoyment of the fee in remainder after the life estate ends as the uncertainty of the person who

has a present right to enjoy the future estate if the particular estate came to an end now, which determines the character of the remainder. A remainder is vested if the remainderman, being alive, will take at once if the life tenant were to die. The fact that his enjoyment is postponed, and, on a certain event, as on his death, may never take place at all, does not make the remainder contingent. But where there is no person now in being upon whom the enjoyment and possession of the remainder would devolve as a remainderman, if the particular estate were to terminate, the remainder is contingent."

1 Schouler, Wills, Executors and Administrators (5th ed.) sec. 562, states: "In short the law does not favor the abeyance of estates but estates by way of remainder vest at the earliest period possible, unless the will shows a contrary intention. And vested interests liable to devestment are preferred in construction to interests contingent."

2 Alexander, Commentaries on Wills, sec. 1005, states: "It is not the certainty of possession or enjoyment which distinguishes a vested remainder, but the certainty of the right of future possession or enjoyment if the remainderman, who is ascertained, lives until the determination of the preceding estate. Where the devise is to the remainderman 'from and after' or 'after' or 'at' or 'on' the death of the life tenant, or words of similar import are employed, such expressions are construed as relating to the time of the enjoyment of the state and not as to its vesting, and such remainder is a vested one. The uncertainty as to whether or not the remainderman will live to come into actual possession or enjoyment of the estate does not make the remainder contingent, for that is an uncertainty which attaches to all remainders."

In *Archer v. Jacobs*, 101 N. W. 195 (125 Ia. 467), the court held: "Where a will devised one-fourth of testator's estate to his daughter for life, and upon her death the same to go, share and share alike, to her children or grandchildren, but, if she should die leaving neither chil-

dren nor grandchildren, then to testator's son or his children, the daughter upon the death of the testator took a life estate, and her children then in being took a vested remainder, although such remainder was subject to open and let in after-born children, and although there was no certainty that such children would survive their mother or leave surviving issue." Quoted from with approval in *Shackley v. Homer,* 87 Neb. 146, 177.

This court in *Schuyler v. Hanna,* 31 Neb. 307, held as follows: "It is the present capacity of taking effect in possession, if the possession were to become vacant, not the certainty that it ever will become vacant while che remainder continues, which distinguishes a vested from a contingent remainder."

The supreme court of Illinois in *Hickox v. Klaholt,* 291 Ill. 544, held: "Whenever there is one in being capable of taking the remainder at the termination of a life estate, the remainder is vested in interest although it must wait the termination of the life estate before it can vest in possession."

We think this rule is too well settled to require further discussion, and hold that Benjamin H. Rowan and David R. Rowan, sons of James Rowan, to whom the life estate was devised, took a vested interest at the testator's death. This being true, was the vested interest which they took absolute and indefeasible, during the existence of the life estate, or was it defeasible, and was the vested interest of David R. Rowan defeated by the event of his death? He died during the lifetime of his father, in whom the life estate vested.

Thompson, Wills, sec. 258, says: "There is a class of gifts occupying an intermediate position between absolute gifts and contingent gifts which vest in the beneficiary subject to being divested by the happening of a contingency or the exercise of a power. Until the contingency happens or the power is exercised this gift has all the incidents of an indefeasible interest. If the contingency never happens or the power is never exercised

the gift bcomes absolute.  The most common example of this class of gifts is where a remainder is vested subject to be divested on the death of the first taker leaving children, or the birth of issue of another."

In *Sumpter v. Carter*, 115 Ga. 893, the will of John M. Carter provided as follows: "I give, bequeath, and devise to my beloved wife  *  *  *  all of my property and effects  *  *  *  during her natural life or widowhood, *  *  *· and, in case of my said beloved wife not intermarrying, then in that event my will is that at her death my whole estate be then equally divided between· my six children, to wit, my five daughters (naming them) and my son (naming him).  My said effects thus going into the hands of my said daughters not to be subject to the control of any husband, .but the same to belong to my said daughters and their children. . And in case either of my said six children should depart this life without leaving issue, then their part of my estate to be equally divided between my other children, to be controlled in the same way as first.above directed."

The court held that a vested remainder may be absolutely or defeasibly vested, and that upon the death of the testator each of his children took a vested remainder interest, subject to be divested in favor of testator's other children, as substituted devisees, upon such child dying during the existence of life tenancy, without leaving a child or children who survived the life tenant.

This question was before this court in *Shackley v. Homer*, 87 Neb. 146.  The testator, Harrison W. Cremer, devised certain tracts of land to his executors to be held by them in trust until his son Cedric attained the age of 25 years, with directions that when Cedric attained this age the executors should convey the land in question to him in fee.  The testator further provided that, in the event of the death of said Cedric before reaching the age of 25 years, leaving a widow or child or children surviving him, said executors should convey a one-third part of the premises devised to such son to his widow, and the

remaining two-thirds to such child or children, share and share alike. If he leaves no widow but leaves a child or children the premises shall be conveyed to them. If he leaves a widow, but no children, they shall convey to the widow an undivided one-third of the premises and the remainder to his mother, brother and sister, or such of them as shall be living, share and share alike. The court held that upon the death of Harrison W. Cremer, testator, the full title to the property in question vested in Cedric E. Cremer, subject, however, to defeasance in the event of his death before attaining that age.

In the case of *Case v. Haggarty*, 91 Neb. 746, the will of the testator, Henry F. Hill, read as follows: "2d. I give and bequeath to my beloved wife Hannah C. Hill, in lieu of homestead and dower, the use, during her natural life, of the southwest quarter of section 17, of town (ship) 6 north, of range 4 east, Saline county, Nebraska, provided that she shall keep the taxes paid thereon and the interest on the incumbrance that may be thereon at my death. The intention being that this bequest shall release all my other real estate of which I may die seised or possessed of all claims of dower or other interest by my said wife, and that at her death said property shall descend to my heirs share and share alike, that is to say, to my now living children, viz., Susan Case, Beatrice Davidson and Rose Kline shall each be entitled to a one-third interest in said property, but should either of my said daughters die before my said wife then the portion that would have gone to her shall descend to her children share and share alike, and should either of my said daughters die without issue then it is my desire that the portion that would have gone to her shall go to the surviving sisters, or their heirs."

Rose Kline mortgaged her interest in the premises during the lifetime of her mother Hannah C. Hill, and predeceased her mother, leaving children. The court was called upon to determine the status of the mortgage given by her, and held as follows:

"By the language used, it seems clear that it was the intention of the testator that the fee title should vest in the three living children, only upon the condition that they should outlive their mother, and, in case of their not doing so, the title should go to their children by force of the will; that whatever interest the daughter would have should terminate at her death, if that event occurred before the death of the widow, and upon such death the interest she would have had should go to her children. If this is the proper construction, not only the interest of Rose Kline but that of her mortgagee was terminated by her decease."

The rule is well established in other jurisdictions that an estate in remainder may vest in a devisee subject to defeasance. This court has heretofore announced its adherence to that doctrine, and we shall hold in the instant case that Benjamin H. Rowan and David R. Rowan took a vested estate, defeasible or indefeasible, according to the intention of the testator.

In the foregoing paragraphs we have held that by the use of the words, "issue of his body," the maker of the will meant lineal descendants; that the language of the will created a remainder, and not an executory devise; that this remainder was vested, and not contingent; that is to say, Benjamin H. Rowan and David R. Rowan, sons of James Rowan, took a vested interest in the land as remaindermen at the death of their grandparent, the testator, and that their vested interest is defeasible or indefeasible, according to the intention of the testator.

The construction contended for by appellant Benjamin H. Rowan is disposed of when we hold that the estate created is a vested, and not a contingent, remainder, or executory devise, and that the testator meant lineal descendants by the use of the expression "issue of his body." The construction contended for by appellants Johnston, trustee, and Citizens State Bank are likewise disposed of by the court's holding on these two questions. We need, therefore, only consider the constructions contended for

by appellant Coe and appellees.    We cannot agree with
learned counsel for appellant in his views.

Had the will read: "I will and devise said farm to my
said son James, to have and to hold during the term of
his natural life, and at his death to the issue of his body
in fee simple, if he shall leave any such issue,"—Benjamin
H. Rowan and David R. Rowan would· have taken an
absolute vested interest that would have descended to
their heirs at law at their death, subject only to open up
to let in after-born issue of the body of their father.    But
the testator did not stop here.    The will provides that if
he (James Rowan) shall not leave any such issue surviv-
ing him, then, in that case, the same must go to the heirs
of testator's blood.    Were we to adopt the view of appel-
lant Coe, it would be equivalent to saying that the last
above quoted provision of the will is meaningless or in-
valid; it would be to hold that, if both of the sons of
James Rowan predeceased their father, each leaving a
widow and no issue surviving, the fee would go to James
Rowan, the father, and the widows of the two sons.    This
was not the testator's intention.    He said in unimpeach-
able language that it should go to his son James for the
term of his natural life,· at his death to the issue of his
body, if he should leave any issue surviving him, if not,
then that it should go to his own (testator's) heirs at
law.    It was within the power of the testator to have
given the farm to his son James for life, and at his death
to his issue, without limitations or conditions; or to have
devised it to his son James for life, and at his death to
the issue of his body or their heirs, their widows, the
state, a charitable institution, or whomsoever else he
chose, but he said: "If my son James leaves no issue
surviving him at his death, then same shall go to the heirs
of my blood."    His desire evidently was that it should
not go to strangers to his blood.

Appellant Benjamin H. Rowan suggests the following: ·
"Let us assume that immediately after the probating of
the will, the life tenant, his wife and their then living

children should have joined in a warranty deed to a purchaser for value; such a deed, if the remainder vested, would convey the absolute title; then what right would a third child, born after the deed had been delivered, have to take any part of the property? We are entitled to an answer to this inquiry, as it contains, to use a common expression, the milk in the cocoanut."

We think the views we have heretofore expressed furnish the answer. To make it plainer, however, we will say that the grantee would have taken what the grantors had to give. James had a life estate, Benjamin and David each had a vested estate in the remainder, subject to defeasance. Had B. and D. both survived, their grantee would have taken an indefeasible estate in fee simple. During the life of James, the grantee would have had his interest; that is, a life estate, plus a defeasible vested estate in remainder. David having predeceased his father, his death defeated his vested interest. It would have defeated it had he in his lifetime conveyed it to a grantee. Any interest that either Benjamin or David might have conveyed to a grantee would have been defeasible by their death, during the existence of the life interest of their father. If both of them had survived their father and a third child had been born, the grantee's title, like his grantors', would have been defeated or reduced to this extent, for it would open to let in the after-born issue. This is the only construction that can be given that gives effect to the whole instrument, and carries out the evident intention of the testator, and that would not deprive his heirs of their right under the will to take the property in case James Rowan died without issue surviving him.

The construction contended for by appellant Benjamin H. Rowan would mean that, if David predeceased his father, as he did, leaving issue, and Benjamin survived him, even a day, and left issue, the children of Benjamin would take to the exclusion of the children of David. This is an illogical, inequitable, and unnatural distribu-

tion of the estate. The law favors that construction of a will which conforms most generally to the general law of inheritance.

We are satisfied it was his intention that his son Robert and his lineal descendants, if any survive him, should take the Ohio farm; that James and his lineal descendants, if any survive him, should take the Nebraska farm; that, if either died without leaving issue surviving, the land should go to the other son, or his issue, who would be, of course, the heirs at law of the testator. The decree entered by the trial court carries out this thought.

For the reasons herein stated, the decree of the district court is

AFFIRMED.